**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALEXANDER FULTON | |
| Appellant | No. 2326 EDA 2015 |

Appeal from the PCRA Order June 19, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009044-2009

BEFORE:  OTT, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 07, 2017**

Alexander Fulton appeals from the order entered June 19, 2015, in the Court of Common Pleas of Philadelphia County, that dismissed without a hearing his first petition filed pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546.  Fulton seeks relief from the judgment of sentence to serve an aggregate term of 5 to 10 years' incarceration followed by 10 years' probation, after he was convicted in a jury trial[1] of conspiracy, possession of an instrument of crime, simple assault, robbery, and impersonating a public servant.[2]  Fulton contends trial

---

[*] Former Justice specially assigned to the Superior Court.

[1] Fulton had previously proceeded to a jury trial that ended in a mistrial. **See** N.T., 6/10/2010, at 155.

[2] 18 Pa.C.S. §§ 903, 907(a), 2701(a), 3701(a)(1)(ii), 4912.

counsel was ineffective for failing to (1) raise a double jeopardy claim following a mistrial, (2) request a lineup prior to the preliminary hearing, and (3) object to the trial court's jury instruction.[3]  **See** Fulton's Brief at 6. Based upon the following, we affirm.

Fulton's convictions arise from a home invasion robbery.  The facts of this case are set forth in this Court's decision in Fulton's direct appeal.  **See** **Commonwealth v. Fulton**, 64 A.3d 25 (Pa. Super. 2012) (unpublished memorandum), *appeal denied*, 68 A.3d 907 (Pa. 2013).  Furthermore, the PCRA court has fully summarized the procedural history relevant to this appeal.  **See** PCRA Court Opinion, 1/4/2016, at 1–3.  Therefore, we will not restate the background of this case, but will proceed directly to the issues raised in this appeal.

Our review is guided by the following legal principles:

We review a ruling by the PCRA court to determine whether it is supported by the record and is free of legal error. **Commonwealth v. Blakeney**, 108 A.3d 739, 748-49 (Pa. 2014), *citing* **Commonwealth v. Spotz**, 616 Pa. 164, 47 A.3d 63, 75 (Pa. 2012). Our standard of review of a PCRA court's legal conclusions is *de novo.* **Id.** at 749.

\*\*\*\*

In analyzing such claims, we begin with the presumption counsel is effective. **Commonwealth v. Robinson**, 623 Pa. 345, 82 A.3d 998, 1005 (Pa. 2013). To prevail on an ineffectiveness claim, appellant must satisfy, by a preponderance of the evidence, the performance and prejudice standard set forth in

---

[3] Fulton timely complied with the PCRA court's order to file Pa.R.A.P. 1925(b) concise statement.

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In Pennsylvania, we have applied *Strickland* by looking to three elements an appellant must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) appellant suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (Pa. 1987).

\*\*\*\*

A court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; if a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. *Robinson*, 82 A.3d at 1005, *citing Strickland, supra; Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 701 (Pa. 1998).

\*\*\*\*

[T]he PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied "'there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings.'" *Commonwealth v. Roney*, 622 Pa. 1, 79 A.3d 595, 604 (Pa. 2013), *quoting Commonwealth v. Paddy*, 609 Pa. 272, 15 A.3d 431, 442 (Pa. 2011), *quoting* Pa.R.Crim.P. 909(B)(2). "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Roney*, 79 A.3d at 604-05, *quoting Commonwealth v. D'Amato*, 579 Pa. 490, 856 A.2d 806, 820 (Pa. 2004).

*Commonwealth v. Hannibal*, ___ A.3d ___, ___ [No. 705 CAP, 2016 Pa. LEXIS 2663, at *9, *13-16] (Pa. Nov. 22, 2016).

Fulton first contends trial counsel was ineffective for failing to raise a double jeopardy claim after his first trial ended in a mistrial. Fulton

- 3 -

maintains that the mistrial was caused by prosecutorial misconduct or government misconduct when its police witness, Detective Joseph Cremen, referenced Fulton's prior arrest record in answer to a question posed by the District Attorney. *See* N.T., 6/10/2010, at 134 ("Q. What specific address -- where did you get that information regarding that address [where a search warrant was executed]? A. I believe this … part of the defendant's arrest record had that address --"). Fulton argues: "The District Attorney knew that the address was procured from [Fulton's] arrest record because the Search Warrant was executed by the police prior to [Fulton's] arrest and after the procurement of his mug shot." Fulton's Brief at 13.

"The double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." *Commonwealth v. Basemore*, 875 A.2d 350, 358 (Pa. Super. 2005), *quoting* *Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1992). "In order to raise double jeopardy implications, prosecutorial misconduct must be deliberate, undertaken in bad faith and with a specific intent to deny the defendant a fair trial." *Id.*, *quoting* *Commonwealth v. Santiago*, 654 A.2d 1062, 1085 (Pa. Super. 1994). Furthermore, "gross negligence on the part of the Commonwealth is never a sufficient basis upon which to bar retrial *on double jeopardy grounds.*"

*Commonwealth v. Kearns*, 70 A.3d 881, 886 (Pa. Super. 2013) (emphasis in original).

Here, trial counsel moved for a mistrial, stating he did not blame the prosecutor,[4] after which the prior trial judge stated to the prosecutor:

> It is totally clear that you were not gunning for that answer in any way, shape or form.  It was clear to [trial counsel] because he said it.  It was clear to me that you were not attempting to get that information.  Setting that aside, something jumped out of his [Detective Cremen's] mouth --."

N.T., 6/10/2010, at 136.

The prosecutor told the court Detective Cremen's answer "was a misspeak, I believe it was never intentional in this case, based on the totality of the circumstances and how long Detective Cremen had been speaking in this case." *Id.* at 138.  The prosecutor opposed the motion for

---

[4] In requesting a mistrial, trial counsel stated, "I don't blame the DA for this."  N.T., 6/10/2010, at 135.  After trial counsel finished making his request, the prosecutor stated:

> Your Honor, if I may address the matter.  I believe the information to my question was, quote, unquote, in regards to getting information which was elicited during the course of interviews and 229s.  Where -- just so you know where my pattern of question was going --

*Id.* at 135–136.

The trial court then called upon trial counsel, and trial counsel reiterated, "I don't blame him at all." *Id.* at 136.

mistrial, and asked the trial court to issue a limiting instruction. *See* N.T., 6/10/2009, at 143.

Ultimately, the trial court granted the motion for mistrial and, in doing so, emphasized:

> I do want to make clear, however, it is very clear to me that the statement made by Detective Cremen was in no way, shape, or form anything [the prosecutor] expected to come out of his mouth. [The prosecutor] has acted completely professionally from start to finish in this case. So it is not something that I would blame or hold against the prosecution in this case.
>
> I frankly think it just jumped out of Detective Cremen's mouth, you know, I don't think he was trying to get that in. But I'm absolutely 100 percent confident that this was not something that the prosecution was intending to have happen. ….

N.T., 6/10/2010, at 150–151.

The PCRA court, in support of its decision to dismiss the instant PCRA petition, concluded that Fulton's ineffectiveness issue based on counsel's failure to seek to bar retrial was meritless. The PCRA court opined, "At worst, it might be argued that, in light of his experience as a police officer, Detective Cremen's reference to [Fulton's] 'arrest record' may have amounted to negligence on his part. This alone, however, in light of *Kearns*, is insufficient to bar retrial." PCRA Court Opinion, 1/4/2016, at 15. The PCRA Court further opined that "[a] careful review of the record fails to reveal that any course of conduct on the part of the Commonwealth intended to force [Fulton] into moving for a mistrial," and that "the record fully supports Judge Rau's conclusion that she was 'absolutely 100 percent

confident that this was not something that the prosecution was intending to have happen.'" ***Id.***

Our review finds the PCRA court's conclusions are supported by the record. Because the record does not demonstrate misconduct on the part of the prosecution, a motion to dismiss on double jeopardy grounds would properly have been denied. ***See Basemore, supra***. Accordingly, Fulton's underlying issue is without merit and, therefore, no relief is warranted on this ineffective claim of ineffectiveness. ***See Commonwealth v. Jones***, 912 A.2d 268, 278 (Pa. 2006) ("Counsel will not be deemed ineffective for failing to raise a meritless claim.").

In his second issue, Fulton claims trial counsel was ineffective for failing to request a line-up for eyewitness and victim James Scheppach prior to the preliminary hearing. Fulton maintains Scheppach's in-court identification was tainted because Scheppach had told police he did not see the second assailant, and then identified him in a photo array, stating that he "If I had to choose, I'd say this guy … from his physical stature which includes his shoulders and ears," and that he was "80% sure." Fulton's Brief at 14, citing PCRA Exhibits.

Regarding this claim, it is well settled that

> "an accused does not have a constitutional right to a line-up and the suggestiveness of a courtroom identification is only one factor to be considered in determining the reliability of the identification evidence. Moreover, this jurisdiction has 'declined to accept a *per se* rule that a pre-trial, pre-hearing line up is mandatory in all cases.' *A*

*fortiori*, counsel's failure to request a lineup or failure to object to identification testimony is not per se ineffective assistance." [We must then] review the totality of the circumstances to see if there was a reliable independent basis for the in-court identification by the [crime] victim.

***Commonwealth v. Edwards***, 2000 PA Super 330, 762 A.2d 382, 391 (Pa. Super. 2000) (discussing ***Commonwealth v. Kenon***, 333 Pa. Super. 366, 482 A.2d 611, 613-14 (Pa.Super. 1984)) (citations omitted). To assess the totality of the circumstances, we should consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." ***Id.*** (quoting ***Manson v. Brathwaite***, 432 U.S. 98, 114, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977)).

***Commonwealth v. Burton***, 770 A.2d 771, 787 (Pa. Super. 2001).

The PCRA court rejected Fulton's claim that trial counsel was ineffective in failing to request a line-up, explaining:

This Court has already addressed the sufficiency and accuracy of the identification testimony introduced at trial in its prior 1925(b) Opinion [relating to Fulton's direct appeal]. (Court's Exhibit "A"). As previously noted, on May 1, 2009, "Mr. Scheppach clearly identified [Fulton] as the second man to enter his home" and that "[d]espite vigorous cross-examination, Mr. Scheppach remained steadfast in his identification of [Fulton]." Additionally, "Detective Cremen corroborated this testimony when he testified that Mr. Scheppach identified [Fulton] within ten seconds of being shown the photo array containing [Fulton's] photograph, on May 1, 2009." This is especially telling since this identification was made within a week of the robbery and led to [Fulton's] arrest over a week later during a routine traffic stop. Finally, "Mr. Steppach's identification testimony was further supported by the testimony of Detective Hartman, who testified that the latent print he recovered from the bogus document left behind was that of [Fulton]." (Court's Exhibit "A," pgs. 8, 9).

[Fulton's] bald assertion clearly fails to meet his burden of showing that counsel's actions were unreasonable and resulted

in prejudice to him, that is, it fails to convince the Court that had trial counsel requested a lineup, knowing of the prior identification, the result would have been different. The evidence at trial argues to the contrary, especially in light of Mr. Scheppach's positive identification of [Fulton] prior to his arrest, supported by fingerprint identification. Reviewing the totality of the circumstances, trial counsel cannot be faulted or found ineffective for not requesting a lineup. "Counsel will not be deemed ineffective for failing to raise a meritless claim." *Commonwealth v. Marinelli*, 910 A.2d 672, 680 (Pa. 2006). …

PCRA Court Opinion, 1/4/2016, at 11–12.

Based on our review, we agree with the PCRA court's sound analysis. Mr. Scheppach testified that a week after the incident, he made an identification from the photo array in under 60 seconds, and was "extremely confident" at that time that he had identified one of the men that came into his house from the photo array. N.T., 8/29/2011, at 33. In addition, Detective Cremen testified that when Mr. Scheppach was shown the photo array identified Fulton as one of the assailants "within 10 seconds." *Id.* at 155.

Moreover, Mr. Scheppach stated at trial that having seen Fulton in person in court, he was "very confident" he had identified the correct person he had seen at his house. *Id.* at 36. Mr. Scheppach testified he had three opportunities to observe Fulton: first, through the peephole; second, on the sidewalk, 18 inches below as Mr. Scheppach stood inside his house; and third, when Mr. Scheppach was on his knees in the foyer of his house with the lights on. *Id.* at 36–37. In addition, Fulton's fingerprints were found on the false document that assailants used to gain entry to Scheppach's

home. *Id.* at 148. Based on the fingerprint evidence, Mr. Scheppach was shown the photo array by Detective Cremen. *Id.*

The record reveals there was a reliable independent basis for the in-court identification. Therefore, Fulton's ineffectiveness claim lacks arguable merit. Moreover, Fulton cannot show prejudice, i.e., that the result would have been different had counsel requested a line-up, since, as the PCRA court pointed out, Mr. Scheppach remained confident in his photo array identification at trial. Accordingly, Fulton's second ineffectiveness claim fails.

Finally, Fulton argues trial counsel was ineffective in failing to object to a portion of the trial court's charge to the jury.

When reviewing a challenge to a jury instruction, we must review the jury charge as a whole to determine if it is fair and just. *Commonwealth v. Baker*, 963 A.2d 495, 507 (Pa. Super. 2008). A trial court has broad discretion in phrasing its jury instructions and can choose its own words as long as the law is clearly, adequately, and accurately described to the jury. *Commonwealth v. Ly*, 980 A.2d 61, 88 (Pa. 2009). The trial court commits an abuse of discretion only when there is an inaccurate statement of the law. *Baker*, 963 A.2d at 507. We will not review a charge by taking isolated comments out of context. *Commonwealth v. Fisher*, 813 A.2d 761, 769 (Pa. 2002).

Here, Fulton maintains trial counsel should have objected to the trial court's jury instruction because the trial court prefaced the jury instruction on identification, stating:

The defense in this case, as has been asserted several times, is a defense of identification.  That's been true throughout the trial.

In his opening, you'll recall [trial counsel] said no one is contesting that the light-skinned man with tattoos pointed a gun and committed a robbery.  His defense in this case, this man's defense in this case, is all about identification, that he was not the second man.

N.T., 8/29/2011, at 79.  Fulton claims:  "The [c]ourt did not give the opinion of the guilt of [Fulton].  It did however take out of the province of the jury a decision as to the sufficiency of the evidence, whether the matter was fabricated, or in the very least, find [Fulton] guilty of a lesser graded offense."  Fulton's Brief at 16.

Based on our review, we conclude this argument presents no basis upon which to disturb the decision of the PCRA court that denied relief on this claim.  The trial court's remarks simply stated the defense presented by trial counsel to explain the jury instruction that it was about to give regarding identification.  Furthermore, the trial court repeatedly instructed the jurors that regarding the evidence, they were the sole factfinders.  The trial court also properly instructed the jury regarding the Commonwealth's burden of proof and the elements of the crimes charged.  Finally, Fulton ignores the fact that the jury found him not guilty of burglary.

At the beginning of the jury charge, the trial court instructed the jury, "It is for you and you alone to decide this case based on the evidence that was presented from the witness stand and in accordance with the instructions I am now going to give you." N.T., 9/29/2011, at 68–69. The trial court also told the jury:

> [I]f I have said or done anything during the course of the trial or if I say or do anything in this closing instruction that indicates to you that I have an opinion about any witness or about our verdict, I want to tell you two things. Number one, I have no opinion about either one, the witness or your verdict.
>
> The second thing is that if I had an opinion, it would be the least well-informed opinion in this courtroom because unlike you, I can hardly see the witnesses when they're testifying.
>
> The only opinion that matters is your opinion.

*Id.* at 69–70. The trial court further instructed the jury, "As judges of the facts, you are the sole judges of the credibility of the witnesses and their testimony. This means you must judge the truthfulness and accuracy of each witness' testimony and decide whether to believe all or part or none of that testimony." *Id.* at 74. Additionally, the trial court stated: "While you're judging the credibility of each witness, you're likely to be judging the credibility of other witnesses or evidence. If there's a real irreconcilable conflict, it's up to you to decide which, if any, conflicting evidence or testimony you believe." *Id.* at 76.

After the trial court made the statement at issue, it instructed the jury in accordance with the standard instruction for identification testimony. *See*

Pa. Suggested Standard Jury Instruction (SSJI) (Crim) § 4.07B, "Identification Testimony – Accuracy in Doubt." Specifically, the trial court told the jury:

> Identification testimony must be received with caution if the witnesses, because of bad position or lighting or other reasons, did not have a good opportunity to observe the criminal, if the witness in his testimony was not positive as to identity, or if the witness identification testimony was weakened by qualifications or hedging.
>
> If you believe that one or more of these factors are present, then you must consider with caution the witness' testimony identifying the defendant as the person who committed this crime, in this case, as the second man.

N.T., 8/29/2011, at 79-80.

> Finally, in closing, the trial court reminded the jury:
>
> You, the jurors, are the sole judges of the facts … Your decision in this case, as in every case that we hear in this courthouse, is a matter of considerable importance.
>
> Remember, that it is your responsibility as jurors to perform your duties and to reach your verdict based on the evidence as it was presented during the trial.

*Id.* at 104–105.

When read as a whole, the jury instructions adequately present the law. **Baker, supra**. As such, there is no basis upon which Fulton can demonstrate that the court's statement constituted an abuse of discretion. Therefore, Fulton's claim lacks merit, and it follows that counsel was not ineffective in failing to object to the charge. In any event, the court's

- 13 -

remarks cannot have prejudiced Fulton since the jury acquitted him on the burglary charge.

Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2017