J-A04005-18

J-A04006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NELSON RIVERA, JR. | |
| Appellant | No. 792 MDA 2017 |

Appeal from the Order May 8, 2017
In the Court of Common Pleas of Clinton County
Criminal Division at No: CP-18-CR-0000513-2016

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NAPHEACE JAMAL COOPER-REID | |
| Appellant | No. 793 MDA 2017 |

Appeal from the Order May 8, 2017
In the Court of Common Pleas of Clinton County
Criminal Division at No: CP-18-CR-0000245-2016

BEFORE: STABILE, NICHOLS, AND RANSOM,* JJ.

MEMORANDUM BY STABILE, J.: **FILED JUNE 13, 2018**

_____

* Retired Senior Judge assigned to the Superior Court.

J-A04005-18

J-A04006-18

Appellants, Nelson Rivera, Jr. and Napheace Jamal Cooper-Reid, co-defendants in a drug trafficking case, appeal from an order denying their motions to bar retrial on double jeopardy grounds following the declaration of a mistrial. Appellants contend that the Commonwealth committed prosecutorial misconduct with the intent to force a mistrial or prejudice Appellants' right to a fair trial. We consolidate these appeals pursuant to Pa.R.A.P. 513, and we affirm.

Appellants were charged with twenty counts of possession with intent to deliver a controlled substance, a general conspiracy to sell a controlled substance, two counts of corrupt organizations, one count of criminal use of a communication facility and one count of dealing in proceeds of unlawful activity. The case was complex because there were nineteen alleged sales of various controlled substances between July 25, 2014 and April 19, 2015. The trial court set aside five days for a jury trial, and the Commonwealth provided a voluminous amount of pretrial discovery to Appellants.

The Commonwealth committed multiple missteps during trial. First, it moved to qualify Agent Andrew Sproat, a lead investigator in this case who posed as a heroin user, as an expert in voice recognition. N.T., 2/27/17, at 45-57, 61-66. The trial court denied the Commonwealth's motion because it failed to disclose before trial its intent to qualify Agent Sproat as an expert witness. *Id.* at 77-78.

- 2 -

Next, the Commonwealth attempted to introduce a PowerPoint presentation to the jury that summarized evidence it had produced during pretrial discovery. Appellants objected on the ground that the Commonwealth had not disclosed the PowerPoint presentation itself before trial. N.T., 2/29/17, at 74. The trial court ordered the Commonwealth to provide a copy of the PowerPoint to Appellants before introducing it into evidence. The Commonwealth did so but altered one of the PowerPoint slides without first advising Appellants. N.T., 3/1/17, at 179-80. The slide originally reflected that one Draymond Jones made a drug delivery on April 19, 2015, but the Commonwealth corrected the slide to reflect that Appellant Cooper-Reid made the delivery—a claim that was consistent with a report that the Commonwealth provided Appellants during pretrial discovery. *Id.* at 179-80. The trial court permitted the jury to view the corrected slide.

Third, the Commonwealth destroyed a cell phone that contained text messages between Agent Sproat and Appellant Rivera. N.T., 3/1/17, at 12. Agent Sproat testified that in November 2014, he had phone conversations and text message communications with Rivera concerning heroin purchases. *Id.* at 239-45. Rivera objected, claiming the Commonwealth had to provide the original text messages to him. The prosecutor explained that the text messages might have been memorialized in investigative reports but that the original text messages may not be available. *Id.* at 246. Agent Sproat then explained that he turned in his prior work phone, which contained the text

messages in question, in order to receive another work phone, but that he did not take photographs of text messages with Rivera on the first work phone. *Id.* at 248. The Commonwealth then removed the text messages from the first work phone. *Id.* at 6-7. When the trial court asked if a phone company could retrieve the deleted text messages, Agent Sproat conceded the Commonwealth's actions rendered the phone permanently unavailable. *Id.* at 7-9. He explained that the Commonwealth removed the text messages because the phone contained confidential information, including information from other cases, but that he described the text messages *verbatim* in his investigative reports. *Id.* at 10-12. The trial court concluded that the Commonwealth did not act in bad faith by removing the text messages from the phone, and that Agent Sproat's testimony concerning text messages was permissible under Pa.R.E. 1004.[1] *Id.* at 20.

Finally, the Commonwealth failed to disclose Appellant Rivera's inculpatory statement before Agent Sproat's testimony at trial. Agent Sproat testified that on April 16, 2015, he had a phone conversation with Rivera in which Rivera agreed to sell heroin on April 19, 2015. N.T., 3/1/17, at 171-72. On April 19, 2015, Agent Sproat learned that Appellant Cooper-Reid would make the sale, not Rivera. *Id.* at 172-79. Agent Sproat wrote a report that

---

[1] Pa.R.E. 1004 provides in relevant part: "An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith." Pa.R.E. 1004(a).

the controlled purchase on April 19, 2015 was arranged on April 16, 2015, but the report did not mention that the April 16, 2015 conversation was with Rivera. *Id.* at 188-200. The trial court concluded the Commonwealth committed a discovery violation by not informing Appellants prior to trial that Agent Sproat's conversation on April 16, 2015 was with Rivera. *Id.* at 188-204. Due to this error, the trial court granted a mistrial on the third day of trial.

The trial court scheduled a retrial, but Appellants moved to bar retrial on the basis of double jeopardy. In response, on May 5, 2017, the trial court convened a hearing in which Agent Sproat testified about the Commonwealth's errors during trial. The theme of his testimony was that he did nothing intentional to prejudice Appellants during trial.

Agent Sproat explained that (1) he, the trial prosecutor, and a police chief corrected the PowerPoint slide to state that Appellant Cooper-Reid made the drug delivery instead of Jones, (2) the PowerPoint consisted of information included in reports that Appellants received during discovery, and (3) the PowerPoint presentation was a work in progress at the time of trial. The prosecution showed the corrected PowerPoint slide to the jury instead of the incorrect slide. Agent Sproat testified that he did not intentionally change information on the PowerPoint but simply corrected the mistaken reference to Jones. N.T., 5/5/17, at 3-42.

- 5 -

With regard to the text messages deleted from his first work phone after he turned it in, Agent Sproat explained that he did not photograph the text messages on this phone because of security issues. Agent Sproat added that his work phone did not change often, so he believed he would continue to have access to his text messages. He did not turn in his first work phone intending for the text messages to be deleted. *Id.*

Finally, with regard to his phone call with Rivera on April 16, 2015, Agent Sproat testified that he could recall this conversation without notes because it was a significant event in the case, and therefore he did not need to memorialize it in a report. He testified that he did not intentionally fail to mention in his April 19, 2015 report that the conversation was with Rivera. *Id.*

After the hearing, the trial court denied Appellants' motion to bar retrial on double jeopardy grounds, concluding the Commonwealth's mistakes did not amount to deliberate misconduct or a pattern of pervasive misconduct. The trial court stated its order was immediately appealable. Appellants filed timely appeals, and both Appellants and the trial court complied with Pa.R.A.P. 1925.

In his appeal at 792 MDA 2017, Appellant Rivera raises a single issue:

Whether the [trial] court committed an abuse of discretion/error of law in denying Appellant's Motion to Bar Retrial, despite the continuing discovery issues during the trial held February 27, 2017 through March 1, 2017 and subsequent mistrial as a result thereof. Specifically, whether the Honorable Court erred in not granting [Appellant's] Motion to Bar Mistrial when said discovery

violations, including the destruction of evidence in the form of text messages and notes from police interviews were established at the Court's hearing held May 5, 2017.

Appellant Rivera's Brief at 4. Similarly, in his appeal at 793 MDA 2017,

Appellant Cooper-Reid raises a single issue:

Whether the [trial] court committed an abuse of discretion/error of law in denying Appellant's Motion to Bar Retrial, despite the continuing discovery issues during the trial in this matter, to the extent that said discovery issues denied [Appellant] a fair trial in this matter, as well as overwhelming evidence that the Commonwealth, through its agent(s), destroyed evidence, including text messages?

Appellant Cooper-Reid's Brief at 6. We review these arguments together.

Appellants ask this Court to reverse the trial court's order denying their

motions to bar retrial on double jeopardy grounds.

An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo* . . . To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings:

Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

***Commonwealth v. Kearns***, 70 A.3d 881, 884 (Pa. Super. 2013) (citations

omitted).

The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, Section 10 of the Pennsylvania Constitution protect a defendant from repeated criminal prosecutions for the same offense. *Id.* Ordinarily, the law permits retrial when the defendant successfully moves for mistrial. If, however, the prosecution engages in certain forms of intentional misconduct, the Double Jeopardy Clause bars retrial. *Id.* Article I, Section 10, which our Supreme Court has construed more broadly than its federal counterpart, bars retrial "not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." *Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1992).

A prosecutor's error, even an error constituting gross negligence, does not deprive the defendant of a fair trial. *Kearns*, 70 A.3d at 886. However, "where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied." *Id.* at 884.

> Thus under Pennsylvania jurisprudence, it is the intentionality behind the Commonwealth's subversion of the court process, not the prejudice caused to the defendant, that is inadequately remedied by appellate review or retrial. By and large, most forms of undue prejudice caused by inadvertent prosecutorial error or misconduct can be remedied in individual cases by retrial. Intentional prosecutorial misconduct, on the other hand, raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial. As this Court has often repeated, '[a] fair trial is not simply a lofty goal, it is a constitutional mandate, . . . [and] [w]here that constitutional

mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity."

*Id.* at 884–85 (citations omitted).

Several decisions illuminate the difference between intentional misconduct, which triggers double jeopardy protections, and gross negligence, which does not. In **Smith**, the Commonwealth intentionally withheld information from a capital defendant, including (1) an agreement with its chief witness pursuant to which he received lenient treatment at sentencing on unrelated charges in exchange for his testimony, and (2) material, exculpatory physical evidence that it had discovered during the trial consisting of grains of sand found between the toes of the murder victim during her autopsy. The sand was consistent with the defendant's claim that someone else committed the crime in Cape May, New Jersey, not him in Pennsylvania. Emphasizing the egregious nature of the Commonwealth's misconduct and its resulting prejudice (the defendant's conviction and death sentence), the Supreme Court held that the Double Jeopardy Clause of the Pennsylvania Constitution "prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant and thereby deny him a fair trial." **Id.**, 615 A.2d at 325. Because the prosecutor's conduct "was intended to prejudice the defense and thereby deny him a fair trial, [the defendant] must be discharged on the grounds that

his double jeopardy rights, as guaranteed by the Pennsylvania Constitution, would be violated by conducting a second hearing." *Id.*

In *Commonwealth v. Martorano*, 741 A.2d 1221 (Pa. 1999), the prosecutor committed misconduct during trial including "blatantly disregarding the trial court's evidentiary rulings, disparaging the integrity of the trial court in front of the jury, and repeatedly alluding to evidence that the prosecutor knew did not exist." *Id.* at 1222. While acknowledging the misconduct, the Commonwealth argued that double jeopardy principles were not proper because *Smith* only applied where the prosecution withheld exculpatory evidence. The Supreme Court rejected this argument, holding that double jeopardy barred retrial where the prosecutor's action "evinces the prosecutor's intent to deprive [the defendant] of a fair trial; to ignore the bounds of legitimate advocacy; in short, to win a conviction by any means necessary." *Martorano*, 741 A.2d at 1223.

Finally, in *Commonwealth v. Anderson*, 38 A.3d 828 (Pa. Super. 2011) (*en banc*), the defendant was convicted of sexually assaulting three mentally retarded children who resided at a state hospital. This Court reversed the defendant's conviction and remanded for a new trial due to the prosecutor's misconduct during closing argument. On remand, the trial court ordered the prosecutor not to meet with any of the complainants unless other personnel from the hospital were present. The prosecutor violated this order by meeting alone with one of the complainants for several hours to rehearse

his testimony and then lied to the trial court that the meeting did not take place. This Court held that the prosecutor's misconduct violated Pennsylvania's Double Jeopardy Clause and affirmed the trial court's order granting the defendant's motion to dismiss. *Id.* at 840.

In contrast, *Kearns* demonstrates that gross negligence by the Commonwealth does not require dismissal of a criminal case. During a non-jury trial in an attempted murder case, defense counsel obtained a continuance when he learned that the Commonwealth failed to produce an incident report from the West Deer Police Department. When trial reconvened one week later, the Commonwealth admitted that defense counsel had requested the entire case file during the continuance period, and that there were two additional important documents that had not been disclosed to him. The court granted the defendant's motion for a mistrial, and the defendant filed a motion to dismiss alleging a double jeopardy violation. The court dismissed all charges and barred a retrial, stating that "[w]hile it did not appear that the prosecutor intentionally withheld this evidence, it is apparent . . . that the [p]rosecution was grossly negligent in failing to obtain and produce the clearly discoverable material." *Kearns*, 70 A.3d at 885.

This Court reversed and remanded for further proceedings, stating:

We accept the factual determinations of the trial court regarding the Commonwealth's conduct and, further, we accept its legal conclusion that the Commonwealth was grossly negligent in withholding discoverable evidence from the defense based upon those factual determinations. Nevertheless, gross negligence on

- 11 -

the part of the Commonwealth is never a sufficient basis upon which to bar retrial on double jeopardy grounds.

*Id.* at 886; *see also Commonwealth v. Strong*, 825 A.2d 658, 668-70 (Pa. Super. 2003) (prosecution's failure to disclose information pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), that key witness was receiving leniency in exchange for testimony did not warrant dismissal of charges, where there was no evidence demonstrating specific intent to deny defendant fair trial).

In the present case, the trial court reasoned that "nothing in the evidence presented to us, particularly the testimony of [Agent] Sproat, would suggest that the Commonwealth intended to keep [any] information from defense counsel." Order Denying Motion of Defendants to Bar Retrial, 5/8/17, at 2. The court continued:

> We find that neither the failure to clarify the contact between [Agent] Sproat and Rivera on the 16th nor the belated modification of a PowerPoint nor any of the other discovery violations amounted to a deliberate and intentional tactic to deny [Appellants] a fair trial. Clearly, [the prosecutor] and his witnesses should have made a more diligent effort to guarantee defense counsel had the information they believe was necessary. On the other hand, the sheer complexity of this case and the fact that the task force allowed [Appellants] to allegedly engage in nineteen (19) separate sales before making an arrest resulted in the accumulation of massive amounts of evidence which defense counsel understandably had difficulty assimilating. Nonetheless, we are not convinced that any alleged omissions or misstatements amounted to deliberate misconduct or a pattern of pervasive misconduct [that] would justify the dismissal of the charges against [Appellants]. The appropriate remedy for the negligence of the prosecution is simply a new trial.

*Id.* at 2-3.

We see no reason to overturn this decision. The trial court presides as factfinder when the defendant moves to bar retrial on the basis of prosecutorial misconduct. If the court determines that the Commonwealth committed intentional misconduct to deprive the defendant of a fair trial— *e.g.*, the prosecutor deliberately concealed exculpatory evidence (**Smith**), misled the jury about non-existent evidence (**Martorano**), or brazenly violated a court order and then lied to the court that no violation took place (**Alexander**)—the trial court should grant the defendant's motion to bar retrial under Pennsylvania's Double Jeopardy Clause. Conversely, if the court determines that the Commonwealth was negligent, or even grossly negligent, such as the prosecutor in **Kearns** who failed to turn over multiple important documents during discovery, barring retrial is too harsh a sanction. We cannot reverse the trial court's finding of intent or negligence when it is supported by the record. **Kearns**, 70 A.3d at 884. Here, the trial court found that the Commonwealth's errors were the product of negligence instead of intent to deprive Appellants of a fair trial. Agent Sproat's testimony during trial and the post-trial evidentiary hearing supports this finding. Agent Sproat confirmed that the alteration of the PowerPoint slide, deletion of text messages from his first work phone, and his failure to state in his report that his conversation on April 16, 2015 was with Appellant Rivera were all errors but not deliberate acts of misconduct. The proper sanction, therefore, was

J-A04005-18

J-A04006-18

not to dismiss the charges against Appellants but to make the Commonwealth retry Appellants in a new trial.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/13/2018